IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CHRISTOPHER Y. SODOM,**

**Plaintiff**,

v.

**WALMART SUPER CENTER,**

**Defendant**.

CIVIL ACTION NO.): 1:23-CV-92
(JUDGE KLEEH)

### REPORT AND RECOMMENDATION, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 18] BE GRANTED

This matter is before the undersigned United States Magistrate Judge pursuant to a Referral Order [ECF No. 10] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on December 28, 2023. By the Referral Order, Chief Judge Kleeh directed that the undersigned enter written orders or reports and recommendations, as appropriate, and to handle other matters herein. Presently pending before the Court is Defendant's motion for summary judgment [ECF No. 18] and memorandum in support [ECF No. 18-1], thereof, filed on April 2, 2024. The Court also is in receipt of *pro se* Plaintiff's response in opposition [ECF No. 22] to the summary judgment motion, filed on April 29, 2024, as well as Defendant's reply [ECF No. 23] in support of its summary judgment motion, filed on May 9, 2024.

Based upon a thorough review of the motion, response, reply; of the entire record herein; and of pertinent legal authority, the undesigned respectfully **RECOMMENDS** that Defendant's motion for summary judgment [ECF No. 18] be **GRANTED** as set forth herein.

1

## I. PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

Plaintiff, proceeding *pro se*, filed a Complaint in the Circuit Court of Monongalia County, West Virginia on or about August 8, 2023. [ECF No. 1-1, at 2]. Defendant removed the action to this Court on November 16, 2023 on the basis of diversity jurisdiction. While Plaintiff's claims are not entirely clear, he seems to allege that he suffered discrimination on the basis of race and/or his national origin in the workplace, and otherwise suffered retaliation in the workplace. [ECF No. 1-1, at 3].

Plaintiff is a Black man of Nigerian origin. He was a former temporary employee of Defendant in Morgantown, West Virginia. Defendant employed Plaintiff from June 11, 2023, to July 19, 2023. Plaintiff worked on the late evening shift for a remodeling job. Plaintiff claims, and Defendant does not dispute, that on July 14, 2023, Plaintiff and a coworker named Benjamin Hines ("Hines") got into a physical altercation, with Hines verbally threatening Plaintiff during the fight. Hines did not hold a supervisory position with Defendant. Preceding this altercation, Plaintiff and Hines argued at a birthday party held on July 1, when Plaintiff confronted Hines about Hines' locking himself in a room with a female partygoer. In another incident, Hines made a threatening "finger gun" gesture toward Plaintiff while at work.

While employed by Defendant, Plaintiff claims there was a workplace rumor that an unidentified coworker was racially profiling Hispanic coworkers. Plaintiff did not identify this coworker, the victims, or report the incidents to a supervisor. Plaintiff believed another coworker had already made a supervisor aware of it. Perhaps more to the point, Plaintiff has not claimed – by dint of this alleged profiling or other workplace occurrences of which he complains – that he suffered discrimination or retaliation for being Black or Nigerian.

During Plaintiff's employment, Defendant began investigating sexual harassment allegations against Plaintiff. Three women had reported incidents of Plaintiff making unwanted and vulgar comments towards them at various points during his employment. Written statements detailing these sexual harassment allegations were submitted to Defendant's management staff on July 14, 2023. Plaintiff denies that he engaged in such sexual harassment and states he was unaware of the investigation before his termination.

On July 14, Plaintiff observed one of the women, Miracle Copeland ("Copeland"), speaking with a shift supervisor, Brandyn Prince ("Prince"). Afterward, Prince questioned Plaintiff on whether he made any comments to Copeland that evening; Plaintiff denied doing so. Prince instructed Plaintiff to not speak to Copeland. However, Plaintiff approached Copeland to ask what she had told Prince, but Prince told him that they would speak about it later. Later during the shift, Plaintiff approached Copeland again in the presence of Hines. Plaintiff claims that he only asked a question about Copeland when Hines approached and attacked him. Defendant states that Hines intervened because Plaintiff was threatening Copeland. The two men fought briefly before being separated by Prince and other employees, and were then sent home with pay.

On July 17, after encountering each other during employment hours again, Hines made a threatening "finger gun" gesture towards Plaintiff, which Plaintiff reported to supervisors. Hines' employment was terminated on July 17. That same evening, multiple employees reported that they spotted Plaintiff with a box cutter speaking to Copeland in a menacing manner. Copeland was among the people who witnessed this conduct and reported that Plaintiff appeared to be gesturing towards her with the box cutter. For this conduct with the box cutter, the sexually harassing comments, the failure to refrain from speaking with Copeland, and attendance issues, Defendant terminated Plaintiff's employment on July 19.

In sum, Plaintiff alleges that Defendant's apparent inaction on the (rumored and seemingly unsubstantiated) racial profiling of Hispanic employees by another unidentified employee created a discriminatory workplace environment. He also alleges that the work environment was unsafe for him, owing to Defendant's allegedly insufficient action against Hines after the physical altercation. Finally, Plaintiff alleges that his termination was retaliatory for complaining about Hines to supervisors.

## II. LEGAL ISSUES AND ANALYSIS

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct a plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendant here moves for summary judgment. As is well-established, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, "[a]lthough we view the evidence in the light most favorable to the nonmoving party, that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and relies on more than 'a mere scintilla of evidence' to withstand summary judgment." Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 252 (4th Cir. 2018) (citations omitted). Additionally, the party filing a summary judgment motion must first demonstrate that there is no genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sufficiently shows that

4

there is no genuine factual issue such that there is only a legal issue for the Court to resolve, then the burden shifts to the non-moving party to a "make sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

### A. Plaintiff Fails To Show That Race Or National Origin Discrimination Played A Role In His Termination

Defendant here correctly argues that Plaintiff fails to establish viable claims for any type of actionable employment discrimination resulting from his termination from Defendant's employment. The West Virginia Human Rights Act and Title VII of the Civil Rights Act are the relevant statutes that determine when a plaintiff may have a claim of discrimination based on race or national origin. See W. Va. Code § 5-11-9 (subsequently repealed and reenacted at W. Va. Code § 16B-17-9); 42 U.S.C. §§ 2000e-2000e17. A claim for discrimination under either statute is governed by an evidentiary framework. McConnell Douglas Corp. v. Green, 411 U.S. 792, 802-4 (1973). Claimants bear the burden of proving a *prima facie* case by demonstrating, by a preponderance of the evidence, three distinct factors: (a) they are a member of a protected class; (b) the employer made an adverse decision concerning them; and (c) but for the plaintiff's protected class, the adverse decision would not have been made. Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 429 (W. Va. 1986). Satisfying the third element requires Plaintiff "show[ing] some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Larry v. Marion Cnty. Coal Co., 302 F. Supp. 3d 763, 770 (N.D.W. Va. 2018) (citation and quotation omitted). The burden then shifts to the employer to present a "legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does

5

so, then the burden shifts back to the claimant to show that this reason given by the employer is a pretext to a discriminatory purpose. Id.

Plaintiff has failed to show the evidence necessary for a *prima facie* case for discrimination on the basis of race or national origin. He stated during his deposition that neither Defendant nor its employees made racist remarks towards, about, or around him, nor were insensitive remarks about his Nigerian nationality made towards, about, or around him. Pl's Depo. 20:5-18; 51:12-52:4. [ECF No. 18-2]. The only instance in which Plaintiff has identified of any type of discrimination occurring was a coworker allegedly profiling Hispanic coworkers and searching them. Id. at 20:16-23. Even in the most generous light to Plaintiff, he cannot use the unsubstantiated rumors about a fellow employee's discrimination against other minorities as evidence that he was discriminated against himself on the basis of his race or national origin. Chan v. Montgomery Cnty. Md., No. 8:12-CV-01735-AW, 2013 WL 1773574, at *5 (D. Md. Apr. 24, 2013) ("Plaintiff does not specify Jones' races, and it is unclear that, presumptively, it is plausible to infer that a person who discriminates against members of one racial minority harbors racial animosity against members of another racial group."). What is more, Plaintiff has not produced evidence to substantiate this allegation, such as the name of the employee or any victims of the alleged discriminatory behavior.

Since Plaintiff has no evidence that discrimination based on his race or national origin occurred, his claims under Title VII and the West Virginia Human Rights Act fail. Accordingly, the undersigned **FINDS** that Plaintiff's claims fail on this point.

### B. Defendant Took Steps Necessary To Create A Safe Workplace After Plaintiff Was Threatened

Plaintiff claims that Defendant failed to take appropriate action to create a safe workplace after Plaintiff received death threats. In order for a workplace to be deemed unsafe for an actionable

claim, Plaintiff must meet a similar burden-shifting framework as in McDonnell Douglas. Kaszynski v. Thompson, 83 Fed.Appx. 526, 528 (4th Cir. 2003) (per curiam). Specifically, Plaintiff must prove a *prima facie* case that he was subjected to conduct that was: (1) unwelcome; (2) based on his race or national origin; (3) sufficiently severe or pervasive to alter his conditions of employment and create an abusive working environment; and (4) imputable on some factual basis to the employer. See Syl. Pt. 5, Hanlon v. Chambers, 464 S.E.2d 741 (W. Va. 1995).

There are three developments which Plaintiff argues led to an unsafe workplace. The first was an instance of provocation between Plaintiff and Hines, which occurred at an off-site location outside working hours. Pl's Depo. 14: 11-19. Allegedly offensive conduct that occurs *outside* of work mitigates the finding of severe conduct that creates an abusive working environment. See e.g., Napier v. Stratton, 513 S.E.2d 463, 466 (W. Va. 1998) (finding that "several of [events] occur[ing] while appellant was not at work" did not constitute a "severe or pervasive" condition to the employment).

The second instance which Plaintiff highlights was the July 14 physical altercation with Hines while at Defendant's property during working hours. The fight itself is not actionable, as Hines was a non-supervising coworker. His conduct could implicate Defendant's liability "if [Defendant] knew or should have known" about Hines' intention to fight Plaintiff and failed to act on that knowledge. See Dooley v. Mylan Pharms., Inc., 2014 WL 1761924, at *10 (N.D.W. Va. Apr. 30, 2014) (citation omitted). Plaintiff has demonstrated nothing in this regard about Defendant's foreknowledge of Hines' intention to fight. Additionally, when Defendant's employee, Prince, broke up the fight and sent both employees home, nothing in the record shows that Defendant's employee was acting in a discriminatory or unfair fashion. Plaintiff has not

7

produced anything to refute Defendant's statement that Hines was sent home; Plaintiff stated only that he was unsure about whether it happened. Pl's Depo. 31: 4-15; 33: 7-13.

The final instance was Hines' threatening gesture towards Plaintiff on July 17 while the two were on the job for Defendant. Plaintiff states – and Defendant does not contest – that on that date, Hines made a "finger gun" at Plaintiff during working hours. Pl's Depo. 36: 12-20. Defendant took proper action by firing the threatening employee. As required by Dooley, Defendant acted on the knowledge provided by Plaintiff that Hines was a potential threat to Plaintiff. Again, Plaintiff shows no foreknowledge by Defendant, and no inappropriate action (or lack thereof) by Defendant.

Plaintiff has failed to allege an incident where Defendant failed in its duties to protect and create a safe work environment for Plaintiff. Plaintiff's allegations failed to meet any standard to sustain a claim, let alone the severe and pervasive conditions required for a cause of action. See Napier 513 S.E.2d, at 466. Accordingly, the undersigned **FINDS** Defendant took swift and appropriate action, such that Plaintiff's claims fail on this point.

### C. Defendant Terminated Plaintiff After Conducting A Sexual Harassment Investigation, Which Is Not Retaliation

All information set forth in the record is that, after beginning an investigation into Plaintiff's alleged sexual harassment, Defendant terminated his employment. By no measure, under the facts adduced herein, does this amount to actionable retaliation.

To succeed on a claim of retaliation under the WVHRA or Title VII, Plaintiff must show, by a preponderance of the evidence:

> (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

8

Frank's Shoe Store v. W. Va. Human Rights Comm'n, 179 W. Va. 53, 61 (1986). Plaintiff has failed to meet any of the four elements of a retaliatory termination.

Plaintiff has not stated he was involved in any type of protected activity at the time of his termination. A "protected activity" is activity taken by an employee to oppose "a practice forbidden by Title VII." Cosby v. S.C. Prob. Parole & Pardon Servs., 93 F.4th 707, 718 (4th Cir. 2024). A protected activity is similarly defined for retaliation under the WVHRA. See Larry, 302 F. Supp. 3d, at 774. While Plaintiff did complain to Defendant about workplace issues, these complaints were based on the physical altercations with a coworker; Plaintiff articulated nothing about Title VII or WVHRA violations by Defendant or its employees. See Pl's Depo. 41:23-42:1. Plaintiff recognized that he was not fired for a protected activity, but due to attendance. Pl's Depo. 39:1-7. Failing to meet this element is fatal to a claim of retaliation under either statute.

Though failure to prove one element is enough to dismiss the claim, it is worth addressing the legitimate purposes for which Plaintiff's employment was terminated. Three women came forward with sexual harassment allegations on July 14, 2024. [ECF Nos. 18-5, 18-6, 18-7, 18-8]. Plaintiff made his first complaint about the instances on July 14, 2024, after Copeland reported the alleged sexual harassment. [ECF No. 18-4]. Furthermore, Plaintiff engaged in intervening conduct, witnessed by three individuals, when he wielded a box cutter in the presence of Copeland on July 18, 2024. [ECF Nos. 18-10, 18-11, 18-12]. When the employer can show a legitimate, non-discriminatory reason for terminating employment, a finding of liability is precluded. See Kaszynski, 83 Fed.Appx., at 528-9. Plaintiff has not presented evidence that Defendant used the sexual harassment investigation as a pretext to fire him for any protected activity.

Accordingly, the undersigned **FINDS** that Defendant's decision to terminate Plaintiff's employment was supported by a non-discriminatory reason while Plaintiff was not engaging in a protected activity.

### III. RECOMMENDATION AND CONCLUSION

Accordingly, for the reasons herein stated, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [ECF No. 18] be **GRANTED** and that Plaintiff's Complaint [ECF No. 1-1] be **DISMISSED WITH PREJUDICE** and that this action be stricken from this Court's docket.

Any party shall have fourteen (14) days from the date of service of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

It is so **RECOMMENDED.**

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for

Electronic Case Filing in the United States District Court for the Northern District of West Virginia, and to any parties who appear *pro se* by certified mail, return receipt requested.

Respectfully submitted June 4, 2024.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE